Layne Friedrich (State Bar No. 195431)
Michael J. Chappell (State Bar No. 238138)
LAWYERS FOR CLEAN WATER, INC.
1004 A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155
Email: Layne@lawyersforcleanwater.com

Andrew L. Packard (State Bar No. 168690)
Michael P. Lynes (State Bar No. 230462)
LAW OFFICES OF ANDREW L. PACKARD
319 Pleasant Street
Petaluma, California 94952
Telephone: (707) 763-7227
Facsimile: (707) 763-9227
Email: Andrew@Packardlawoffices.com

Counsel for Plaintiff
RUSSIAN RIVERKEEPER

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUSSIAN RIVERKEEPER, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MILES JONES, an individual, and SHEILA JONES, an individual,<br><br>Defendants. | Case No. 07-CV-00097 JSW<br><br>**STIPULATION TO DISMISS PLAINTIFFS' CLAIMS WITH PREJUDICE AND REQUEST FOR DISTRICT COURT TO RETAIN JURISDICTION TO ENFORCE SETTLEMENT AGREEMENT; [PROPOSED] ORDER** |

Plaintiff Russian Riverkeeper and Defendants Miles Jones and Sheila Jones by and through their attorneys of record, hereby enter into this stipulation, dismissal, and settlement agreement.

WHEREAS, Russian Riverkeeper, Miles Jones, and Sheila Jones (the "Parties") have entered into a settlement agreement, which achieves a full and final settlement of Russian Riverkeeper's claims against Miles Jones and Sheila Jones as set forth in Civil Case No. 07-00097 ("Settlement Agreement");

WHEREAS, a copy of the Settlement Agreement is incorporated herein and attached as Exhibit A to this stipulated dismissal and order.

NOW THEREFORE, the Parties jointly stipulate as follows:

1. The Parties request that this Court retain jurisdiction over this action for the sole purpose of enforcing compliance by the Parties with the terms of the Settlement Agreement;

2. Russian Riverkeeper's action against Miles Jones and Sheila Jones is dismissed with prejudice.

Dated: April 23, 2007          LAWYERS FOR CLEAN WATER, INC.

                               By:  /s/ Layne Friedrich
                                    _____
                                    Layne Friedrich
                                    Attorneys for Plaintiff
                                    Russian Riverkeeper


Dated: April 22, 2007          HEDANI, CHOY, SPALDING & SALVAGIONE, LLP

                               By:  /s/ Michael Spalding
                                    _____
                                    Michael Spalding
                                    Attorneys for Defendants
                                    Miles Jones and Sheila Jones

[~~PROPOSED~~] ORDER

Based on the above stipulation of the Parties, IT IS HEREBY ORDERED that the above captioned action is dismissed with prejudice as to Miles Jones and Sheila Jones.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction over this matter for the purpose of enforcing compliance by the parties with the terms of the Settlement Agreement.

IT IS SO ORDERED

DATED: April 24, 2007

*[signature: Jeffrey S. White]*
The Honorable Jeffrey S. White
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

# SETTLEMENT AGREEMENT

**I.    RECITALS**

WHEREAS, Russian Riverkeeper ("Riverkeeper" or "Plaintiff") is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Healdsburg, California. Riverkeeper's mission is to preserve, protect, and enhance the water quality, native fisheries, and wildlife of the Russian River;

WHEREAS, Miles Jones and Sheila Jones (collectively referred to as "Defendants") are the owners of the real property located at 14965 River Road in Guerneville, California (hereinafter referred to as the "Property");

WHEREAS, on October 27, 2006, Riverkeeper served Defendants, the United States Environmental Protection Agency ("EPA"), EPA Region IX, the State Water Resources Control Board ("State Board"), the Regional Water Quality Control Board, North Coast Region ("Regional Board"), and the District Commander of the United States Army Corps of Engineers, San Francisco District ("Corps") with a notice of intent to file suit letter ("Notice Letter") under Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq*. ("Clean Water Act" or "Act") Sections 505(a) and (b), 33 U.S.C. § 1365(a) and (b);

WHEREAS, the Notice Letter alleged that Defendants had in the past and were continuing to violate Sections 301(a) and 404 of the Act, 33 U.S.C. §§ 1311(a) and 1344, by failing to apply for and obtain a dredge and fill permit from the Corps as required by Section 404 of the Act, 33 U.S.C. § 1344 ("404 Permit"), that Defendants had in the past and were continuing to violate Section 401(a)(1) of the Act, 33 U.S.C. § 1341(a)(1), by failing to apply for and obtain a State water quality certification ("401 Certification") or a waiver thereof from the State in which the discharges occur prior to discharging into waters of the United States, and Sections 301(a) and 402(p) of the Act, 33 U.S.C. §§ 1311(a) and 1342(p), by failing to apply for and obtain a Construction Permit from the State Board prior to conducting soil disturbing activities;

WHEREAS, on January 5, 2007, Riverkeeper filed a complaint against Defendants in the Northern District of California, Case No. CV-07-00097 JSW ("Complaint" or "Action");

WHEREAS, Defendants filed an answer denying Riverkeeper's standing, asserting denials of certain material allegations in the Complaint and raising certain affirmative defenses;

WHEREAS, Riverkeeper and Defendants (collectively referred to as the "Settling Parties" or "Parties") have agreed that it is in the Parties' mutual interest to enter into a Settlement Agreement setting forth terms and conditions appropriate to resolving the allegations set forth in the Complaint and answer thereto without further proceedings;

WHEREAS, all actions taken by Defendants pursuant to this Settlement Agreement shall be made in compliance with all applicable federal, state and local rules and regulations;

WHEREAS, the Court has jurisdiction over the subject matter of this Action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A);

WHEREAS, venue is appropriate in the Northern District Court pursuant to Section 505(c)(1) of the Act, 33 U.S.C. §1365(c)(1), because the alleged violations took place within this District;

WHEREAS, the Settling Parties agree that the Court has jurisdiction to enforce the terms of the Settlement Agreement.

## II. DEFINITIONS

1. <u>Best Management Practices</u>. Best Management Practices or BMPs as used herein has the same meaning as used in the Construction Permit and means a schedule of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the discharge of pollutants to waters of the United States. BMPs also include treatment requirements, operating procedures, and practices to control site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage.

2. <u>Construction Permit</u>. Construction Permit as used herein means California's General Permit for Discharges Associated with Construction Activities, National Pollution Discharge Elimination System ("NPDES") Permit No. CAS000002, Order No. 99-08-DWQ which applies to soil disturbances of one acre or more, or of less than one acre when part of a larger common plan of development that encompasses one or more acres of soil disturbance, or if there is significant water quality impairment resulting from the activity but not otherwise.

3. <u>Property</u>. Property as used herein means the real property located at 14965 River Road in Guerneville, California.

4. <u>Soil Disturbing Activity</u>. Soil Disturbing Activity as used herein has the same meaning as used in the Construction Permit and means construction activity including but not limited to clearing, grading, demolition, construction of new structures, reconstruction of existing facilities, and disturbances to the ground such as stockpiling or excavating.

5. <u>Storm Water Discharge</u>. Storm Water Discharge as used herein has the same meaning as used in the Construction Permit and means storm water runoff, snow melt runoff, and surface runoff and drainage that leaves the Property but before it reaches the Russian River or other waterway.

## III. COMMITMENTS OF THE PARTIES

1. The Settling Parties agree that this Settlement Agreement and all activities undertaken pursuant to this Settlement Agreement shall be implemented in compliance with all applicable federal and state laws, regulations, orders, and permits. Nothing in this Settlement Agreement shall authorize Defendants to perform work on or around the Russian River in violation of any wet weather prohibitions set forth by the Regional Board.

2. The obligations and requirements set forth on paragraphs 3-8, and 10-12 shall be triggered if Defendants engage in soil disturbing activity requiring Construction Permit coverage as defined and set forth in paragraph II.2 above.

### A. **NPDES Permit Application**

3. At least 120 days prior to conducting soil-disturbing activities on the Property Defendants agree to file a Notice of Intent ("NOI") to obtain permit coverage under the Construction Permit, and to regulate their soil disturbing activities on the Property prior to engaging in any soil disturbing activities. Defendants agree to comply with all of the requirements of the Construction Permit and the Clean Water Act.

4. At least 90 days prior to engaging in any soil disturbing activities on the Property, Defendants agree to submit to Plaintiff a Storm Water Pollution Prevention Plan ("SWPPP") that meets the requirements of the Construction Permit and this Settlement Agreement. Within twenty-one (21) days of receiving Defendants' SWPPP, Plaintiff shall provide written comments to Defendants.

Stipulated Dismissal & Order     5     Case No. 07-CV-00097 JSW

Defendants agree to make good faith efforts to either incorporate Plaintiff's comments into the SWPPP or, in any instance in which they disagree with Plaintiff's comments, provide a written basis for not incorporating those comments. Defendants will have incorporated Plaintiff's comment, or responded why such comments are not incorporated within fourteen (14) days of receipt of Plaintiff's comments. If the Settling Parties cannot agree on the adequacy of the SWPPP, either party shall have the right to invoke the dispute resolution procedures described herein. Defendants shall revise their SWPPP as necessary and resubmit it to Plaintiff for comment according to the timeline set forth herein.

5.	Defendants shall not perform or permit performance of any soil disturbing activities at the Property prior to obtaining Construction Permit coverage, and prior to developing and implementing a SWPPP, with the appropriate BMPs, that meets the requirements of the Construction Permit and this Settlement Agreement.

6.	Defendants agree to apply, obtain, and comply with a Clean Water Act 404 Permit. Defendants also agree to apply, obtain, and comply with a Clean Water Act 401 Certification as required by law. Defendants shall not perform or permit performance of any work that involves the dredging and/or filling of the Russian River prior to obtaining all required permits.

7.	Defendants acknowledge that in order to adequately apply and obtain the required permits they must retain a competent consultant, engineer, or firm with experience in Construction Permit requirements and dredge and fill requirements.

**B.	Development and Implementation of BMPs**

8.	Prior to conducting soil-disturbing activities, Defendants agree to develop and implement BMPs to eliminate and/or reduce the pollutants in discharges or prevent discharges from the Property. Defendants also agree to develop and implement BMPs that achieve compliance with the Construction Permit, and this Settlement Agreement including but not limited to developing BMPs to achieve compliance with applicable water quality standards such as those set forth in the *Water Quality Control Plan, North Coast Region, (2006)* ("Basin Plan"), the California Toxics Rule ("CTR"), 40 C.F.R. § 131.38, and/or a Statewide Water Quality Control Plan. Defendants agree in all other instances to conduct activities in good faith and consistent with the stated mission and goals of Russian Riverkeeper as stated herein.

9. Defendants shall re-vegetate the Russian River's bank at Defendants' Property that is disturbed during soil disturbing activities at the Property with local native vegetation. All such re-vegetation work shall be performed by or under the on-site direction of a qualified consultant. Defendants shall give Plaintiffs at least thirty (30) days notice prior to doing any such re-vegetative activities at the Property.

### C. BMP Maintenance, Inspections, and Sampling

10. <u>BMP Maintenance</u>.  As set forth in Section B.3 of the Construction Permit, Defendants or Defendants' agent(s) who are qualified and familiar and experienced with the Construction Permit, and applicable provisions of the Clean Water Act (hereinafter "Qualified Agent") shall inspect all BMPs at the Property prior to each anticipated rain event, daily during extended storm events, within 24 hours after the storm event has ceased, and monthly during the dry season (defined as June 1 – September 30), to ensure proper implementation and effectiveness of BMPs.  Any BMP that is temporarily altered or otherwise in need of repair or replacement shall be restored, repaired and/or replaced as soon as possible, ensuring that the restoration, replacement or repair shall occur prior to the next rain event.  Defendants agree to generate a report for each inspection detailing the conditions of the BMPs observed during the inspection.

11. <u>Employee Training</u>.  Defendants shall retain a Qualified Agent to train Defendants' employees and/or contractors as follows:

(a) <u>Non-Stormwater Discharge Training.</u>  Provide training on the Construction Permit's prohibition of non-storm water discharges so that employees and/or contractors know what non-storm water discharges are and how to avoid them.  Such training shall be specified in the SWPPP.

(b) <u>BMP Training</u>. Provide training to all Property employees and/or contractors responsible for BMP implementation and maintenance.  Training shall be repeated as necessary to ensure that all such employees and/or contractors are familiar with the Construction Permit's requirements. Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

    (c) <u>Sampling Training</u>. Provide training to all individuals performing sampling at the Property pursuant to this Settlement Agreement. All employees and/or contractors shall thereafter be trained prior to becoming responsible for conducting sampling activities. The training shall be provided by the consultant and shall be repeated as necessary to ensure compliance. Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

    (d) <u>Visual Observation Training.</u> Provide training to all individuals performing visual observations at the Property pursuant to the Construction Permit and this Settlement Agreement. All new staff will receive this training before assuming responsibilities for implementing the requirements of the Construction Permit and this Settlement Agreement. Defendants shall maintain training records to document compliance with this paragraph, and shall provide Riverkeeper with a copy of these records within fourteen (14) days of a written request.

  12. <u>Sampling Plan</u>. At least ninety (90) days prior to beginning soil disturbing activities at the Property, Defendants shall develop a plan for the collection of storm water samples associated with Defendants' soil disturbing activities that incorporates the requirements of this Settlement Agreements and the Construction Permit (hereinafter referred to as "Sampling Plan"). Defendants shall submit the Sampling Plan to Plaintiffs at least ninety (90) days prior to beginning soil disturbing activities at the Property. Defendants agree to make good faith efforts to either incorporate Plaintiff's comments into the Sampling Plan or, in any instance in which they disagree with Plaintiff's comments, provide a written basis for not incorporating those comments. If the Settling Parties cannot agree on the adequacy of the Sampling Plan, either party shall have the right to invoke the dispute resolution procedures described herein.

    (a) <u>Sample Analysis and Sample Frequency</u>. Defendants agree that for each wet season (October 1 - May 31) for the life of this Settlement Agreement, Defendants shall collect up to five (5) samples of storm water discharges associated with Defendants' soil disturbing activities from each location where storm water is discharged from the Property. Sampling shall occur within an hour of the discharge of storm water for each anticipated storm event up to five storm events per wet season. Defendants shall analyze the samples for Total Suspended Solids ("TSS") and all parameters

required by the Construction Permit or other applicable regulations. Samples shall be analyzed with detection limits that the analytical laboratory can use to accurately identify concentrations at or below the effluent limits identified in Paragraph 13. A California state certified laboratory shall perform all sample chemical analyses. Defendants agree to provide Riverkeeper with sample results within seven (7) days of receipt of results from the laboratory.

13. Any storm water discharged from the Property that is associated with Defendants' soil disturbing activities shall achieve at each discharge point, a maximum TSS of 50 mg/L. Failure to meet these limitations shall activate the Action Plan requirements of Paragraph 14.

14. <u>Action Plans</u>. In the event that Defendants' storm water sample results exceeds the TSS limit in Paragraph 13, Defendants shall meet and confer with Riverkeeper within fourteen (14) days after receipt of the sample results to devise a mutually agreed upon plan of action designed to prevent future exceedances of the limit ("Action Plan"). Within seven (7) days of the meeting, Defendants agree to provide Riverkeeper with an Action Plan that addresses exceedances of each pollutant exceeding these applicable limits. Riverkeeper shall then have seven (7) days upon receipt of Defendants' Action Plan to comment on the Action Plan. Defendants shall then have seven (7) days to implement any additional non-structural BMPs, and fourteen (14) days to implement any structural BMPs. If any structural BMPs require agency approval, Defendants shall contact Riverkeeper to request an extension of the deadline to implement the structural BMPs requiring agency approval. Riverkeeper's consent to Defendants' request for an extension of time to implement structural BMPs requiring agency approval shall not be unreasonably withheld. Defendants shall notify Riverkeeper when the Action Plan has been implemented. The Parties agree to comply with the dispute resolution procedures set forth in this Settlement Agreement if there are any disagreements regarding the Action Plan(s).

D. **<u>Reporting and Compliance Monitoring</u>**

15. For the life of this Settlement Agreement, Defendants shall provide Plaintiffs with documents required and contemplated by this Settlement Agreement, and documents relating to development of the Property or local, state or federal permitting for the Property. Storm water

1 sampling and testing results shall be provided within seven (7) days of Defendants' receipt of such information.

16. <u>Site Inspections</u>. Defendants agree that Riverkeeper, accompanied by its water quality engineer, its attorney(s), and other representatives, may conduct up to two (2) onsite inspections at the Property during each calendar year. Riverkeeper shall provide Defendants with at least twenty-four (24) hours notice prior to each inspection. During the site inspection, Riverkeeper or its representatives may collect samples of storm water discharges from the Property. A certified California laboratory shall analyze storm water samples collected by Riverkeeper. Riverkeeper will submit results of the sampling conducted during the inspection to Defendants within fourteen (14) days of receipt of the sampling results. Riverkeeper shall make every reasonable effort to ensure that its inspections are scheduled in such a manner as to allow Defendants' or their consultant to be present during the inspections.

17. To help defray the costs and fees of monitoring Defendants' compliance with the terms of this Settlement Agreement, including but not limited to conducting Site Inspections, reviewing SWPPPs, and sampling data, Defendants agree to pay Plaintiff ten thousand dollars ($10,000) within five (5) days of the Effective Date of this Settlement Agreement. All payments shall be made payable to the Lawyers for Clean Water Attorney Client Trust Account and shall be mailed to Lawyers for Clean Water, Inc., 1004 O'Reilly Ave, San Francisco, California, 94129. Riverkeeper shall provide copies of any invoicing for site inspections and compliance oversight within thirty (30) days of receiving a written request by Defendants or annually if no request is received. Any compliance monitoring money remaining when this Settlement Agreement terminates shall be reimbursed to Defendants.

**E.** **Mitigation Fund and Litigation Fees**

18. Within five (5) days of the Effective Date of this Settlement Agreement Defendants agree to pay the sum of ten thousand dollars ($10,000.00) to Trout Unlimited, Redwood Empire Chapter, 1120 College Avenue, Santa Rosa, CA 95404, attention Kent MacIntosh. The mitigation funding is to be used for the purpose of implementing a project or projects to protect, preserve, and/or restore, or that reduce or mitigate the effects of pollutants in the Russian River watershed.

19. Within five (5) days of the Effective Date of the Settlement Agreement, Defendants shall reimburse Riverkeeper twenty five thousand dollars ($25,000) for its fees and costs incurred in this Action. Payment shall be made within sixty (60) days of the Effective Date and made payable to the Lawyers for Clean Water Attorney Client Trust Account, and mailed to Lawyers for Clean Water, Inc., 1004 O'Reilly Ave, San Francisco, California, 94129.

### III. COMMITMENTS OF PLAINTIFF

20. Stipulated Dismissal. Within five (5) days of the Effective Date of this Settlement Agreement, Plaintiff shall file this Stipulation, [Proposed] Order, and Settlement Agreement with the United States District Court for the Northern District of California.

21. <u>Review by Federal Agencies</u>. Plaintiff shall submit this Settlement Agreement to EPA and the U.S. Department of Justice ("DOJ") within three (3) days of the Effective Date of this Settlement Agreement for review consistent with 40 C.F.R. § 135.5. In the event that EPA or DOJ comments negatively on the provisions of this Settlement Agreement, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

### IV. DISPUTE RESOLUTION

22. The Court shall retain jurisdiction over this matter for purposes of interpreting, modifying or enforcing the terms of this Settlement Agreement, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Settlement Agreement. The Court shall have the power to modify and enforce this Settlement Agreement with all available legal and equitable remedies, including contempt.

23. <u>Meet and Confer</u>. If a dispute under this Settlement Agreement arises, or any party believes that a breach of this Settlement Agreement has occurred, the Settling Parties shall meet and confer, which can be conducted telephonically, within five (5) business days of receiving written notification of a request for such meeting. During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best efforts to devise a mutually agreed upon plan, including implementation dates, to resolve the dispute.

24. If either party fails to meet and confer or the meet and confer does not resolve the dispute, after at least ten (10) business days have passed after the meet and confer occurred or should

have occurred, either party shall be entitled to initiate the formal dispute resolution procedures in Paragraph 25 below.

25. <u>Formal Dispute Resolution</u>. If any meet and confer process provided for in this Settlement Agreement has been terminated and the Settling Parties' disputes have not been resolved, the Settling Parties agree that their exclusive recourse is to file concurrent briefs before Judge White, to determine whether either party is in breach of this Settlement Agreement and, if so, to require the breaching party to remedy any breach identified by the District Court within a reasonable time frame. Within 3 days of receiving one party's notice to invoke formal dispute resolution, the Settling Parties agree to call the Court clerk to schedule a hearing date that gives the Settling Parties at least 14 days to file their concurrent briefs before the hearing. The party initiating the dispute resolution procedures identified in this paragraph may request an expedited hearing schedule, and the non-initiating party shall join in any such request. If Judge White is not available to perform the role identified herein, the Settling Parties agree that the dispute resolution process shall be re-assigned pursuant to applicable rules of the District Court. If a motion or proceeding before the Court relating to enforcement of the terms of this Settlement Agreement is initiated, the prevailing or substantially prevailing party in the formal dispute resolution proceeding shall receive its reasonable costs and attorney's fees incurred in accord with the standard established by § 505 of the Clean Water Act, 33 U.S.C. § 1365.

## V. <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

26. In consideration of the above, upon the Effective Date of this Settlement Agreement, the Parties hereby fully release each other and their respective successors, assigns, officers, agents, employees, and all persons, firms and corporations having an interest in them, from any and all alleged Clean Water Act violations alleged in the Complaint, up to and including the Effective Date of this Settlement Agreement.

27. Nothing in this Settlement Agreement limits or otherwise affects the Settling Parties right to address or take any position that it deems necessary or appropriate in any formal or informal proceeding before the Regional Board, EPA, the Corps, or any other judicial or administrative body on any other matter relating to Defendants.

## VI. <u>MISCELLANEOUS PROVISIONS</u>

28. <u>Termination</u>. This Settlement Agreement shall remain in effect for four (4) years from the Effective Date.

29. <u>No Admission of Liability</u>. Neither the Settlement Agreement nor any payment pursuant to the Settlement Agreement shall constitute or be construed as a finding, adjudication, or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintain and reserve all defenses they may have to any alleged violations that may be raised in the future.

30. <u>Construction</u>. The language in all parts of this Settlement Agreement shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Clean Water Act, or specifically herein.

31. <u>Choice of Law</u>. The laws of the United States shall govern this Settlement Agreement.

32. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Settlement Agreement is held by a Court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

33. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Settlement Agreement shall be sent by regular, certified, or overnight mail as follows:

<u>If to Plaintiff</u>:

Layne Friedrich
Lawyers for Clean Water, Inc.
1004 O'Reilly Ave.
San Francisco, CA 94129

With Copies to:

Don McEnhill
Russian Riverkeeper
P.O. Box 1335
Healdsburg, California 95448

<u>If to Defendant</u>:

Michael Spalding
Hedani, Choy, Spalding & Salvagione, LLP
595 Market Street, Suite 1100
San Francisco, California 94105

Stipulated Dismissal & Order     13     Case No. 07-CV-00097 JSW

OR

Michael Spalding
Hedani, Choy, Spalding & Salvagione, LLP
1682 Novato Boulevard Suite 350
Novato, CA 94947

With Copies to:

Miles and Sheila Jones
32 Corte Miguel Road
San Rafael, CA 94903

34. Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail or deposited with an overnight mail/delivery service. Any change of address or addresses shall be communicated in the manner described above for giving notices. In addition, the Parties may agree to transmit documents electronically or by facsimile.

35. <u>Effect of Settlement Agreement</u>. Plaintiff does not, by its consent to this Settlement Agreement, warrant or aver in any manner that the Defendants' compliance with this Settlement Agreement will constitute or result in compliance with any federal or state law or regulation. Nothing in this Settlement Agreement shall be construed to affect or limit in any way the obligation of the Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Settlement Agreement.

36. <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Settlement Agreement.

37. <u>Modification of the Settlement Agreement</u>. This Settlement Agreement and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties.

38. <u>Full Settlement</u>. This Settlement Agreement constitutes a full and final settlement of this matter.

1    39.    Integration Clause.  This is an integrated Settlement Agreement.  This Settlement Agreement is intended to be a full and complete statement of the terms of the agreement between the parties and expressly supersedes all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Settlement Agreement.

40.    Authority.  The undersigned representatives for Plaintiff and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Settlement Agreement.

41.    Binding Effect.  The provisions of this Settlement Agreement apply to and bind the Parties, including any successors or assigns.  The Parties certify that their undersigned representatives are fully authorized to enter into this Settlement Agreement, to execute it on behalf of the Parties, and to legally bind the Parties to its terms.

42.    No Contest/Admission.  The Parties agree to be bound by this Settlement Agreement and not to contest the terms of the Agreement or its validity in any subsequent proceeding to implement or enforce its terms.  By entering into this Settlement Agreement, the Defendants do not admit liability for any purpose regarding any allegation or matter arising out of this Action.

43.    Effective Date.  The term "Effective Date," as used in this Settlement Agreement, shall mean the last date on which the signature of a Party to this Settlement Agreement was executed.

IN WITNESS WHEREOF, the undersigned have executed this Settlement Agreement as of the date first set forth above.

Dated: April 20, 2007          RUSSIAN RIVERKEEPER

                                        /s/ Don McEnhill
                               By: _____
                                        Don McEnhill


Dated: April 22, 2007          MILES JONES

                                        /s/ Miles Jones
                               By: _____
                                        Miles Jones


Dated: April 22, 2007          SHEILA JONES

Stipulated Dismissal & Order          15          Case No. 07-CV-00097 JSW

|   |   |
|---|---|
| 1 | By: /s/ Sheila Jones |
| 2 | Sheila Jones |

3  APPROVED AS TO FORM AND CONTENT:

5  Dated: April 23, 2007    LAWYERS FOR CLEAN WATER, INC.

|   |   |
|---|---|
| 6 | By: /s/ Layne Friedrich |
| 7 | Layne Friedrich |
| 8 | Attorneys for Plaintiff RUSSIAN RIVERKEEPER |

9

10  HEDANI, CHOY, SPALDING & SALVAGIONE, LLP

|    |   |
|----|---|
| 11 | By: /s/ Michael Spalding |
| 12 | Date: April 22, 2007 |
| 13 | Michael Spalding Attorneys for Defendants MILES AND SHEILA JONES |

15  I hereby attest that I have on file all holograph signatures for any signatures indicated by a
16  "conformed" signature (/S/) within this efiled document.

18  Date: April 23, 2007    LAWYERS FOR CLEAN WATER, INC.

|    |   |
|----|---|
| 19 | By: /s/ Michael J. Chappell |
| 20 | Michael J. Chappell |
| 21 | Attorneys for Plaintiff RUSSIAN RIVERKEEPER |

23  IT IS SO ORDERED:

25  Date: April 24, 2007

26  _____
    Honorable Jeffrey S. White
27  UNITED STATES DISTRICT COURT JUDGE

28

---

Stipulated Dismissal & Order    16    Case No. 07-CV-00097 JSW